UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ELSA VENEGAS, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | EP-24-CV-00001-KC-ATB |
| MARTIN O'MALLEY, *Commissioner of Social Security Administration*, | § § § § | |
| *Defendant*. | § § § | |

### REPORT AND RECOMMENDATION

  This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA). Pursuant to 42 U.S.C. § 405(g), Plaintiff Elsa Venegas, the claimant at the administrative level, appeals from the final decision of Defendant Martin O'Malley, the SSA's Commissioner, denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Pursuant to 28 U.S.C. § 636(c), Appendix C, of this District's Local Rules, and the Honorable District Judge Kathleen Cardone's standing order,[1] the case was referred to the undersigned Magistrate Judge for a report and recommendation. For the reasons that follow, the Court RECOMMENDS that the Commissioner's decision be affirmed.

### I. BACKGROUND

  On December 2, 2021, Venegas applied for disability insurance benefits, alleging disability beginning on December 27, 2020.[2] She later amended her alleged disability onset date

---

[1] *See* https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Standing-Order-Regarding-Civil-Case-Assignments.pdf.

[2] Tr. of Admin. R. [hereinafter, cited as "Tr."] at 52.

to August 27, 2021.[3]  Aged 50 when she applied, Venegas alleged disability based on cirrhosis, anemia, pulmonary fibrosis, hypertension, osteoarthritis, and constipation.[4]  She completed high school and obtained a certificate for licensed vocational nurse from a nursing school.[5]  In the past, she worked as a medical assistant and as a vocational nurse.[6]  She stopped working in December 2020.[7]

Venegas's application was denied initially on January 31, 2022, and on reconsideration on September 26, 2022.  Thereafter, Venegas requested a hearing before an Administrative Law Judge (ALJ).  On May 30, 2023, ALJ Holly Hansen held a hearing; at the hearing, Venegas, represented by her attorney, and a vocational expert testified.  On July 3, 2023, the ALJ denied her application in a written decision.  Venegas appealed to the Social Security Appeals Council for review of the ALJ's decision.  On November 8, 2023, the Appeals Council denied her request for review, and thereby the ALJ's decision became the final decision of the Commissioner.[8]

On January 2, 2024, Venegas, proceeding *in forma pauperis*, brought this action seeking judicial review of the Commissioner's final decision.  On July 18, 2024, Venegas filed her opening brief requesting that the Commissioner's decision be vacated and her claim for disability benefits be remanded for further administrative proceedings.  Pl.'s Br. at 10, ECF No. 10.  On August 16, 2024, the Commissioner filed a response brief in support of his decision.  Def.'s Br.

---

[3] *Id.* at 310.

[4] *Id.* at 310, 511.

[5] *Id.* at 327–28.

[6] *Id.* at 326–27, 520.

[7] *Id.* at 312.

[8] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

in Resp. to Pl.'s Br. [hereinafter, cited as "Def.'s Resp."], ECF No. 11.  Venegas filed a reply brief on September 23, 2024.  Pl.'s Br. in Reply [hereinafter, cited as Pl.'s Reply], ECF No. 13.

## II. THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S FINDINGS AND CONCLUSIONS

Eligibility for disability insurance benefits requires that the claimant be "disabled" within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(E).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  "A claimant has the burden of proving [s]he suffers from a disability."  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. § 404.1520(a)(4).  "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if she gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).  A determination at any step that the claimant is disabled or is not disabled "ends the inquiry."  *Id*.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC").  *Kneeland*, 850 F.3d at 754.  "The claimant's RFC assessment is a determination of the most the claimant can still do despite . . . her physical and

mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (cleaned up); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). "The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754.

Here, ALJ Hansen evaluated Venegas's claim for disability insurance benefits pursuant to the above-mentioned five-step sequential evaluation process. The ALJ found, as a threshold matter, that Venegas's last date insured is December 31, 2025. Tr. at 54. At step one, the ALJ found that Venegas has not engaged in substantial gainful activity since August 27, 2021, the amended alleged onset date. *Id.* at 55. At step two, the ALJ determined that Venegas has several "severe" impairments, to wit, alcoholic cirrhosis, hallux vagus deformity, cervical degenerative disc disease, tenosynovitis, hand tremors, and anxiety. *Id.* The ALJ determined that Venegas's pulmonary hypertension, gastritis, uterine fibroids, and COVID-19 are non-severe. *Id.*

At step three, the ALJ found that Venegas does not have an impairment or a combination of impairments that meets or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (the Listing of Impairments), for presumptive disability. Tr. at 55. Specifically, the ALJ found that Venegas's mental impairment does not meet or medically equal the criteria of Listing 12.06 (anxiety and obsessive-compulsive disorders). In making that determination, the ALJ utilized the psychiatric-review technique (PRT) described in 20 C.F.R. § 404.1520a. Applying the PRT, the ALJ rated Venegas's limitations in four broad functional areas (i.e., the Paragraph B functional criteria) as follows: "mild" in the "understanding, remembering, or applying information" area; "mild" in the "interacting with others" area; "moderate" in the "concentrating, persisting, or maintaining pace" area; and "mild" in the "adapting or managing oneself" area. *Id.* at 55–56.

Next, before going to step four, the ALJ determined that Venegas retained the RFC to perform "light work as defined in 20 CFR 404.1567(b), except [she] may occasionally balance, kneel, stoop, crouch, and crawl, never climb, frequently handle and finger bilaterally, occasionally reach overhead bilaterally, and can perform detailed but not complex tasks in a routine work setting."  Tr. at 57.

At step four, the ALJ found that Venegas is unable to perform her past relevant work—i.e., licensed practical nurse (DOT 079.374-014) and nurse assistant (DOT 355.674-014)—as actually or generally performed in the national economy.  Tr. at 59–60.  At step five, the ALJ found that considering Venegas's age, education, work experience, and RFC, Venegas is capable of making a successful adjustment to other jobs—for example, mail clerk (DOT 209.687-026), information clerk (DOT 237.367-018) and office helper (DOT 239.567-010)—that exist in significant numbers in the national economy.  *Id.* at 61.  The ALJ concluded that Venegas is not disabled within the meaning of the Social Security Act, *id.*, and denied Venegas's application for disability benefits, *id.* at 49.

### III.   STANDARDS FOR JUDICIAL REVIEW

Judicial review, under § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential."  *Garcia*, 880 F.3d at 704.  Courts review such a decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted).  Substantial evidence is "more than a mere scintilla," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), but "less than a preponderance of the evidence," *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotes omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id*.

In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015), but it may not "try the issues *de novo*" or "reweigh the evidence," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704. "Conflicts of evidence are for the Commissioner, not the court[], to resolve." *Sun*, 793 F.3d at 508. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

## IV. DISCUSSION

As mentioned above, the Court's review of the Commissioner's decision denying benefits is limited to two inquiries: whether the decision is supported by substantial evidence and whether the Commissioner used the proper legal standards. *Garcia*, 880 F.3d at 704, *supra*. Venegas assigns two errors to the ALJ's decision—each of which sounds in an argument that the ALJ failed to use the proper legal standards. First, she argues that the ALJ erred because she failed to draw a "logical bridge" between the evidence and her mental RFC determination. Pl.'s Br. at 5, 7–8. Second, she argues that in evaluating the persuasiveness of the opinion of Christal Tucker, a licensed clinical social worker and therapist, the ALJ erred because she mischaracterized the opinion or ignored a portion of the opinion. *Id.* at 5, 8–9. Below, the Court addresses each in turn.

**A. The ALJ's RFC Determination and Logical Bridge**

An ALJ is charged with determining a claimant's RFC. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012).[9] A claimant's RFC "'is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work.'" *Bayer v. Colvin*, 557 F. App'x 280, 288 (5th Cir. 2014) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988)). In making that determination, therefore, the ALJ must consider "all . . . relevant medical and other evidence" in the record, including the claimant's own "descriptions . . . of [her] limitations from [her] impairment(s)," any medical source's "statements about what [the claimant] can still do," 20 C.F.R. § 404.1545(a)(3), and "the claimant's medical records," *Webster*, 19 F.4th at 718. In determining the claimant's *mental* RFC, in particular, the ALJ must assess the claimant's abilities to carry out certain mental activities "in a work setting" such as "understanding, remembering, and carrying out instructions" and "responding appropriately to supervision, co-workers, and work pressures." 20 C.F.R. § 404.1545(c).[10]

The Fifth Circuit has long rejected the notion that an ALJ must "follow formalistic rules" when articulating the reasons for his determinations. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). At the same time, the Fifth Circuit has explained that conclusory findings, without any discussion of the pertinent evidence or "any explanation as to how [the ALJ] reached the conclusion" are "beyond meaningful judicial review." *Audler v. Astrue*, 501 F.3d 446, 448 (5th

---

[9] *See also McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) ("[T]he ALJ's RFC assessment is an administrative, rather than a medical, determination.").

[10] *See also Anderson v. Colvin*, 514 F. App'x 756, 763 (10th Cir. 2013) ("As part of the RFC assessment, the ALJ must consider the claimant's work-related mental limitations, such as the 'ability to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'" (brackets omitted) (quoting SSR 96-8p, 1996 WL 374184, at *6 (SSA July 2, 1996))).

Cir. 2007). "The ALJ . . . must build an accurate and *logical bridge* between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (emphasis added) (citing *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1082 (E.D. Wis. 2001)). Venegas's challenge to the ALJ's RFC assessment turns on the "logical bridge" requirement.

According to the Commissioner, the "logical bridge" concept originally derived from the Seventh Circuit's decision in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996).[11] Def.'s Br. at 12. There, the Seventh Circuit wrote:

> [W]e cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build *an accurate and logical bridge* between the evidence and the result.

*Sarchet*, 78 F.3d at 307 (emphasis added).[12] Still, in reviewing an ALJ's written decision, "common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Here, the ALJ's RFC formulation states that Venegas "can perform detailed but not complex tasks in a routine work setting." Tr. at 57. Venegas does not argue that the RFC is not

---

[11] In response to the Commissioner's propositions that under the Seventh Circuit case law, the "logical bridge" concept requires "some minimum level of analysis of the evidence," represents a "lax standard," and "does not place an onerous burden on the ALJ," Def.'s Br. at 13 (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001), and *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008))—Venegas makes much of the fact that she "relies on the Fifth Circuit case of *Price v. Astrue*," Pl.'s Reply at 2. Venegas overlooks that in *Price*, for the "logical bridge" proposition, the Fifth Circuit cited *Glomski*, an opinion by a district court in the Seventh Circuit, *Price*, 401 F. App'x at 986 (citing *Glomski*, 172 F. Supp. 2d at 1082), and the *Glomski* court in turn cited the Seventh Circuit's decision in *Sarchet*, *see Glomski*, 172 F. Supp. 2d at 1082 ("Further, if the ALJ has not built 'an accurate and logical bridge' between the evidence and the result, the reviewing court must remand for further findings, even if there is enough evidence in the record to support the ultimate result." (quoting *Sarchet*, 78 F.3d at 307)).

[12] *See also Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024) ("We will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusion."); *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) ("[T]he 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard.").

supported by substantial evidence. But she argues that the ALJ erred as a matter of law by failing to draw a "logical bridge" between her finding that Venegas has "poor concentration" and her RFC determination that Venegas is capable of performing "detailed" tasks. Pl.'s Br. at 7 (citing *Price*, 401 F. App'x at 986). She points out that in evaluating the Paragraph B criteria at step 3, the ALJ determined that Venegas has a moderate limitation in the functional area of "concentrating, persisting, or maintaining pace" and that throughout her written decision, the ALJ repeatedly recounted that Venegas was "noted to have poor concentration." *Id.* However, she continues, the ALJ's decision never explains why she concluded that such poor concentration precluded only complex tasks while permitting detailed ones. *Id.*; *see also* Pl.'s Reply at 2 (arguing the ALJ here left a substantial gap in his reasoning between finding both poor concentration and an ability to perform detailed tasks). Venegas adds that the decision offers no explanation for why "detailed" task was chosen rather than these more restrictive alternatives, such as only "one- or two-step" task. Pl.'s Br. at 7.

      The record contains a "psychiatric evaluation" report from Tucker. Tr. at 1352. Therein, under a section entitled "Exam," Tucker noted that Venegas had poor concentration. *Id.*; *see also, e.g.*, *id.* at 1360 (progress notes dated April 4, 2023). The ALJ expressly considered that notation in her Paragraph B-criteria analysis at step 3 and rated Venegas's limitation in the "concentrating, persisting, or maintaining pace" area as "moderate." *Id.* at 56 ("The claimant is noted to have poor concentration." (citing Ex. 15F/14)). The ALJ stated that her RFC assessment reflects the degree of limitation she found in the Paragraph B mental function analysis, *id.* at 56, and expressly considered the therapist's "poor concentration" finding in assessing the RFC, *e.g.*, *id.* at 58.

As an initial matter, to the extent that Venegas's "logical bridge" argument presupposes that "poor concentration" is, as a matter of law, inconsistent with a mental RFC limitation of "detailed but complex" tasks, case law suggests the contrary. *See, e.g.*, *Cruz v. Kijakazi*, No. SA-21-CV-01246-ESC, 2022 WL 17039318, at *5–*6 (W.D. Tex. Nov. 17, 2022) (holding that substantial evidence supported the ALJ's mental RFC, which limited plaintiff to understanding, remembering, and carrying out "detailed but not complex" work-related tasks, where the plaintiff's primary care provider found that the plaintiff had "impaired concentration").[13] Likewise, to the extent that Venegas's argument presupposes that a moderate limitation in "concentrating, persisting, or maintaining pace" area is inconsistent with a mental RFC limitation of "detailed but complex" tasks, again, case law is to the contrary. *See, e.g.*, *id.* at *3–*5 (holding that the ALJ's mental RFC, which limited plaintiff to understanding, remembering, and carrying out "detailed but not complex" job instructions and work-related tasks, is not inconsistent with the ALJ's step three finding that the plaintiff had a moderate limitation in concentration, persistence, and maintaining pace).[14] Nor is "detailed" inconsistent with, or the

---

[13] *See also Hellinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01974-AMK, 2024 WL 3537477, at *5, *8, *12, *14 (N.D. Ohio July 24, 2024) (holding plaintiff failed to show that the ALJ's mental RFC determination, which limited the plaintiff to "detailed but not complex tasks," lacked substantial evidence, where the plaintiff reported "decreased concentration" and the plaintiff's treating physician found that the plaintiff had "poor concentration" (brackets omitted)); *Brodbelt v. O'Malley*, No. 3:23-CV-570-HAB, 2024 WL 1071647, at *2–*4 (N.D. Ind. Mar. 11, 2024) (affirming the ALJ's decision where the plaintiff's family doctor noted that the plaintiff had "poor memory and concentration" and the ALJ's mental RFC determination was that the plaintiff "can understand, remember, and carryout detailed, but not, complex tasks").

[14] *See also Suzan R. v. O'Malley*, No. EP-23-CV-00288-KC-RFC, 2024 WL 3169606, at *4 (W.D. Tex. June 20, 2024) ("[C]ase law in the Fifth Circuit establishes that . . . an RFC limitation to 'detailed but not complex' tasks . . . addresses . . . a moderate limitation" in concentration, persistence, or pace. (collecting cases)), *R & R adopted*, 2024 WL 3404646 (W.D. Tex. July 10, 2024); *Calvert v. Colvin*, No. EP-14-CV-404-ATB, 2016 WL 3906821, at *6 (W.D. Tex. July 14, 2016) (finding mental RFC determination that the claimant could perform work limited to understanding, remembering, and carrying out "detailed but not complex" instructions is not contrary to the ALJ's PRT finding that the claimant was moderately limited in her ability in maintain concentration, persistence, or pace); *Mary C. R. v. Kijakazi*, No. 3:20-CV-00286-BT, 2021 WL 4476764, at *6 (N.D. Tex. Sept. 30, 2021) (rejecting

same as, "not complex." *See, e.g.*, *Jones v. Astrue*, 691 F.3d 730, 732 (5th Cir. 2012) (affirming ALJ's decision where the ALJ found that the claimant "was able to perform detailed but not complex work activities").[15]

Venegas does not point to any pertinent evidence that the ALJ failed to consider in assessing that Venegas is limited to performing detailed but not complex tasks. *Cf. Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015) (concluding that ALJ erred by failing to build a logical bridge from the evidence to her conclusion because the court "cannot discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider, *this pertinent evidence*" (emphasis added)). To the contrary, the Court's examination of the ALJ's decision reveals, as the Commissioner points out, Def.'s Br. at 9–10, 14, that the ALJ thoroughly considered pertinent, non-cumulative evidence in the record.

For example, the ALJ noted that in a function report that Venegas submitted, Venegas reported that she has a fair ability to follow instructions. Tr. at 56 (citing Ex. 4E/4). Specifically, in response to the question, "[h]ow well do you follow spoken instructions?" Venegas answered "fair," and to the question, "how well do you follow written instructions?" she responded, "I have to read instructions a couple of times." *Id*. at 528. The ALJ expressly considered that in the function report, Venegas stated that she does not finish what she starts, but the ALJ contrasted that statement with Venegas's other statement that she can drive a car, which,

---

argument that moderate limitations in concentrating, persisting, or maintaining pace cannot be reconciled with the ability to carry out detailed, but not complex, tasks and instructions and stating, "[t]his is not categorically true" (citing cases)).

[15] *See also Strempel v. Astrue*, 299 F. App'x 434, 437, 439 (5th Cir. 2008) (concluding substantial evidence supports the ALJ's RFC finding, where the ALJ determined that the claimant "was and is able to understand, remember, and carry out detailed, but not complex, instructions" (brackets omitted)); *Mayes v. Astrue*, No. 08-10306, 2008 WL 5069750, at *2 (5th Cir. Dec. 2, 2008) (concluding that ALJ's decision is supported by substantial evidence where the ALJ limited the claimant to "jobs that required that he understand, remember, and carry out detailed, but not complex, instructions").

according to the ALJ, requires a good ability to concentrate. *Id.* at 56 (citing Ex. 4E/4, 6). The ALJ recounted from a doctor's treatment note that Venegas reported "some slight memory loss," but the ALJ also observed that there are no objective findings of impaired memory, fund of knowledge, or intelligence. *Id.* at 56 (citing Ex. 3F/11); *id.* at 58 (same). Citing to a therapy progress note from Tucker, the ALJ noted that Venegas has appropriate insight and judgment. *Id.* at 56 (citing Ex. 15F/14); *id.* at 58 (same). From Tucker's psychiatric evaluation report, the ALJ recounted that Venegas has racing thoughts and poor concentration. *Id.* at 58 (citing 15F/3, 14); *see also id.* at 1349, 1360.

The ALJ also expressly considered the administrative medical findings made by two state-agency consultants, who reviewed the record at the initial and reconsideration stages of the administrative review process,[16] but the ALJ disagreed with them insofar as they did not determine any mental limitations. Tr. at 58.[17] The ALJ reasoned that the lack of any mental limitation is not consistent with the record showing mental symptoms, including some racing thoughts and poor concentration. *Id.* at 58. The ALJ also considered Tucker's medical source statement, where she rated Venegas's abilities to understand, remember, and carry out simple instructions as "marked" and complex instructions as "extreme." Tr. at 1124. However, the ALJ disagreed with those ratings. *Id.* at 59.

Therefore, examining the ALJ's decision with "common sense," *Keyes-Zachary*, 695 F.3d at 1166, the Court can discern that the ALJ's consideration of the pertinent record evidence,

---

[16] *See Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 153 & n.8 (2d Cir. 2024) (Administrative medical findings made by agency medical or psychological consultants at the initial and reconsideration levels of the administrative review process "'are not in themselves evidence at the level of the administrative review process at which they are made' but must be considered, though not necessarily adopted, later in the administrative review process by the ALJ" in assessing the claimant's RFC. (quoting 20 C.F.R. § 404.1513a(a)(1), (b)(1))).

[17] *See also* Tr. at 338 ("No MRFCs are associated with this claim."); *id.* at 345 (same).

including the pieces of evidence discussed above, led to her determination that Venegas can perform "detailed but not complex" tasks in a routine work setting—the only mental limitation the ALJ included in the RFC formulation. *See DeLeon v. Barnhart*, 174 F. App'x 201, 202–03 (5th Cir. 2006) (concluding that ALJ correctly applied the relevant legal standards in determining the claimant's RFC because "in his decision, the ALJ considered and evaluated, *inter alia*, the state examiner's RFC assessment, the medical evidence, and [the claimant's] hearing testimony"); *Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (The ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC."). Critically, Venegas does not point to any medical opinions that she cannot perform detailed tasks or that she is limited to performing only one- or two-step tasks. *Cf. Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023) (concluding that the ALJ met the "logical bridge" standard in part because the claimant "did not provide any opinion from a doctor who would have imposed greater restrictions than those the ALJ found in his decision" and stating that "[t]he lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal"). The Court finds that the ALJ built an accurate and logical bridge between the evidence to her mental RFC determination.

## B. The ALJ's Persuasiveness Analysis

For benefits claims filed on or after March 27, 2017, such as Venegas's claims here, *see* Tr. at 52,[18] the SSA enacted substantial revisions to the regulations and policies governing the

---

[18] In her briefs, Venegas cites 20 C.F.R. § 404.1527 and *Kneeland*, 850 F.3d 749. Pl.'s Br. at 9; *see also id.* at 8 ("It is legal error for an ALJ to reject a medical opinion without explanation, and doing so results in an RFC that is not based on substantial evidence." (citing *Kneeland*, 850 F.3d at 759)); Pl.'s Reply at 1 (same). Section 404.1527, often referred to as the "treating physician rule," governs the evaluation of the medical opinions of the claimant's treating physician and under certain circumstances, requires the agency to assign "controlling weight" to such an opinion; but the regulation applies to claims filed before March 27, 2017. And in *Kneeland*, the Fifth Circuit addressed such a claim, applying § 404.1527. *See, e.g.*, *Kneeland*, 850 F.3d at 752 (recounting procedural facts that "[o]n September 21,

evaluation of medical opinion evidence.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (SSA Jan. 18, 2017).  Under the new regulations, the SSA adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . from [a claimant's] medical sources," including the opinion of the claimant's treating physician.  20 C.F.R. § 404.1520c(a); *see also Webster*, 19 F.4th at 718–19 (stating that for claims filed after March 27, 2017, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past").

      Instead, for claims filed after March 27, 2017, an ALJ must, using several specified factors, "articulate in [her] . . . decision how persuasive [she] find[s] all of the medical opinions" that are in the record.  20 C.F.R. § 404.1520c(b); *see also id.* § 404.1520c(c)(1)–(5) (listing factors).  The ALJ must do so at the "source-level."  *Id.* § 404.1520c(b)(1) ("[W]hen a medical source provides multiple medical opinion(s) . . . , we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis.").  "[T]he most important factors" are "supportability" and "consistency."  *Id.* § 404.1520c(b)(2).  "Supportability" is the degree to which a provider supports her medical opinion by "relevant . . . objective medical evidence and . . . explanations," whereas "consistency" is the degree to which her medical opinion is "consistent with the evidence from other medical sources and nonmedical sources'" in the record.  *Id.* § 404.1520c(c)(1)–(2); *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023).  The ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(b)(2).

---

2006, Kneeland filed a claim for supplemental social security income . . . alleging disability beginning on April 12, 2006"); *id.* at 760 n.52 ("This treating physician regulation currently appears at 20 C.F.R. § 404.1527(c)(2).").

In her written decision, the ALJ expressly evaluated Tucker's opinion but found it unpersuasive. Tr. at 59. In so finding, the ALJ explained:

> [Tucker] opines that the claimant has marked to extreme mental limitations in all categories (Exhibit 10F). This opinion was completed on a checkbox form with *minimal supporting explanation* for the assigned level of limitation. Further, marked to extreme mental limitation is not consistent with the evidence as [a] whole, including the report showing the claimant has the ability to cook for herself, drive a car, shop in stores, and manage her own finances (Exhibit 4E/3-4). Therefore, this opinion is not persuasive.

*Id.* (emphasis added). The ALJ thus explained both the supportability and consistency of Tucker's opinion. Venegas does not argue that the ALJ's persuasive analysis is not supported by substantial evidence. But she takes issue with the ALJ's supportability explanation that Tucker provided "minimal supporting explanation" in that, she claims, that is a mischaracterization of Tucker's opinion. Pl.'s Br. at 8. She says that Tucker's opinion includes "two paragraphs" of supporting explanations, but ALJ mischaracterized or ignored them. Pl.'s Br. at 8–9.

Tucker rendered her opinion on a check-box and fill-in-the-blank form ((Form HA-1152 (01-2017) UF), which is entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." Tr. at 1125–26. The form sets out three sets of primary questions about a claimant's mental abilities to do certain work-related activities, and following each set, the form lists a subsidiary question that asks the form's respondent to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support [his/her] assessment." *Id.* at 1124–25. To assess the merits of Venegas's arguments in their proper context, the Court examines below Tucker's responses to each set of questions in turn.

The first set of questions asks, "[i]s ability to understand, remember, and carry out instructions affected by the impairment?" and instructs the respondent to check the appropriate box ("none," "mild," "moderate," "marked", or "extreme") to describe the claimant's restrictions

in six listed work-related activities, such as "[u]nderstand and remember simple instructions," "[c]arry out simple instructions," "[c]arry out complex instructions," and so on.  Tr. at 1124.  Tucker checked "marked" for some of the activities and "extreme" for others.  *Id.*  However, Tucker left blank the subsidiary question (i.e., the one that asks what particular medical signs and laboratory findings support her assessments) that appears below the list of activities.  *Id.*

Therefore, with respect to the first set of questions, the ALJ did not mischaracterize Tucker's opinion in stating that Tucker provided minimal, and indeed, no, supporting explanation for the assigned levels of limitations.  *Cf. Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (concluding that ALJ was justified in finding the claimant's treating physician's opinion unpersuasive, reasoning that the physician "checked some boxes" but "left blank the short-answer section asking what objective medical findings supported his assessment"); *Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015) ("While the use of box-check or word-circle forms specifying limitations that are *also* explained on the forms or in an associated report is not problematic, the ALJ rightly discounted the conclusory ratings provided by [the plaintiff's treating physician].").

The second set of questions asks, "[i]s ability to interact appropriately with supervisors, co-workers and the public, as well as respond to changes in a routine work setting, affected by the impairment?" and instructs the respondent to check the appropriate box (again, "none," "mild," "moderate," "marked", or "extreme") to describe the claimant's restrictions in four listed work-related activities, such as "[i]nteract appropriately with the public," "[i]nteract appropriately with supervisor(s)," and "[i]nteract appropriately with co-workers."  Tr. at 1125.  For each of the activities, Tucker checked "marked," and in response to the subsidiary question about supporting medical signs and laboratory findings, she stated: "[a]lthough claimant is not

working, due to client's anxiety and forgetfulness, client would be unable to carry out tasks assigned." *Id.*  This is the first of "two paragraphs" that Venegas says the ALJ mischaracterized or ignored.  But Tucker's statement does not explain or support why Tucker gave "marked" ratings, for example, for Venegas's abilities to interact appropriately with co-workers or supervisors.  Moreover, Tucker does not cite any objective medical evidence such as signs or laboratory findings.  *See* 20 C.F.R. § 404.1502(f).

Therefore, with respect to the second set of questions, the ALJ did not mischaracterize Tucker's opinion in reasoning that Tucker provided minimal supporting explanation for the assigned levels of limitations.  *Cf. Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (concluding that ALJ did not err discounting a treating physician's assessments because they "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses," and "[t]hey cite no medical evidence and provide little to no elaboration"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding a treating physician's opinion was not entitled to considerable weight because of "its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations").

The third, and final, set of questions asks, "[a]re any other capabilities (such as the ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself) affected by the impairment?" and next the question, there are two boxes for checking "No" or "Yes."  Tr. at 1125.  The question further asks "[i]f 'yes,' please identify the capability and describe how it is affected," and below it, there is a blank space for a response.  *Id*.  Tucker checked the box with "Yes," and in the blank space below, she wrote:

> Client has to write everything down. Client has extreme forgetful ness [*sic*]. Client is taking [X]ifaxin 550mg 2X daily to assist. Client gets easily distracted and is unable to complete tasks due to forgetfulness.[19]

*Id.* This is the second of the "two paragraphs" that Venegas says the ALJ mischaracterized or ignored. Venegas adds that it is not clear that the ALJ even considered this portion of Tucker's opinion since it was not mentioned in the decision and does not fit the ALJ's description of Tucker's opinion. Pl.'s Reply Br. at 2.

That the ALJ mischaracterized Tucker's explanation appears to be a mischaracterization, or at the very least, a misinterpretation, of the ALJ's decision. The ALJ did not say that Tucker's opinion provided "no" supporting explanation, but instead said that the opinion provided "minimal" supporting explanation. A reasonable mind might accept, and the Court does accept, as accurate the ALJ's assessment that Tucker's statements in response to the third set of questions provided a "minimal" explanation. *See Kim Marie W. v. Kijakazi*, No. 21-CV-1483-DEB, 2023 WL 3568064, at *3 (S.D. Cal. Mar. 24, 2023) (concluding that the ALJ did not err by rejecting a nurse's check-box opinion because it contains "minimal supporting explanation" for the assigned limitations).

The Court also finds meritless Venegas's argument that the ALJ did not consider these statements because she did not mention them in her decision or that they do no "fit" the ALJ's description of Tucker's opinion. An "ALJ does not need to comment on every piece of evidence." *E.g., Price*, 401 F. App'x at 986; *see also Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (Section § 404.1520c does not "require

---

[19] As with the first set of questions, Tucker left blank the space for responding to the subsidiary question to the third set of questions, which asks about supporting medical signs, laboratory findings, etc.

the ALJ to expressly address the persuasiveness of every opinion within every report").[20]  Read properly, the ALJ's supportability and consistency explanations, though brief, address Tucker's statements in response to the third set of questions, and therefore, these statements "fit" the ALJ's description.  For example, the ALJ's reasoning that "extreme" mental limitation is not consistent with the record as a whole, Tr. at 59, addresses Tucker's statement that "Client has extreme forgetful ness [sic]," *id.* at 1125.  Relatedly, elsewhere in her decision,[21] the ALJ noted that Venegas reported "some slight memory loss," but observed that there are no objective findings of "impaired memory." *Id.* at 56 (citing Ex. 3F/11); *id.* at 58 (same).  As another example, the ALJ's mention of "the report showing the claimant has the ability to . . . drive a car" to show why Tucker's opinion is not consistent with the record evidence, *id*. at 59, addresses Tucker's statements that "Client gets easily distracted and is unable to complete tasks," which relate to Venegas's ability to concentrate, persist, and maintain pace.  Elsewhere, similarly, the ALJ noted that according to Venegas's disability report, Venegas generally does not finish what she starts, but observed that "she can drive a car, which requires a good ability to concentrate." *Id.* at 56 (citing Ex. 4E/4).

In sum, the Court finds that in her persuasiveness analysis of Tucker's opinion, the ALJ did not mischaracterize the opinion or ignore any portion of the opinion.  The ALJ did not err in

---

[20] *See also Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence.").

[21] *See Crum v. Comm'r of Soc. Sec*., 660 F. App'x 449, 456–57 (6th Cir. 2016) (stating—in the context of reviewing ALJ's analysis of the consistency factor under 20 C.F.R. § 404.1527(c) (the regulation governing claims filed before March 27, 2017)—that although "the ALJ did not reproduce the list of [the claimant's] treatment records a second time when she explained why [the claimant's primary-care physician's] opinion was inconsistent with this record[,] . . . it suffices that she listed them elsewhere in her opinion"); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (internal citation omitted)).

this regard.

## V. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

So ORDERED and SIGNED this  **13th**  day of December 2024.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**